May it please the Court. My name is Don Lipmanson, representing Appellant Michael Lamelle, and I'd like to reserve two minutes for rebuttal. The conflict in this case between the attorney and the client was so severe that the state court was clearly in error when it found that that conflict was not sufficiently severe to prevent effective assistance of counsel. The using the U.S. v. Moore criteria for review, this conflict was about an intense personal dislike between the client and his counsel to the point where counsel no longer believed that he could even go so far as to humanize his client in front of a jury, that he doubted that he could provide counsel with the client with a fair trial, and that he had developed for the first time in 25 years as a criminal defense attorney an intense dislike for the client. The conflict had transformed between the time of the Marsden hearing in July of 1998, when counsel was rather confident that he could overcome the obstacles that he felt that Mr. Lamelle was putting in his way. But by the time we reached October, counsel had determined that he could no longer offer a fair trial, and therefore he moved to withdraw. And this was the – I want to emphasize this was the first time in a long career they'd ever felt that things had reached that point. He no longer was able to discuss defenses whatsoever with his client. Everything turned into anger and hostility. And under that circumstance, we have what Plumlee describes as a case where the communication is so limited and so dysfunctional that even a very competent counsel can't give representation that's going to provide the client with what he's entitled to under the Sixth Amendment. Then the trial court, unlike what it did in July in the Marsden hearing, failed to give a meaningful inquiry into the nature of the conflict. Back in July, there was a lot of questioning about the details of what the problem was. Here we see a situation where ultimately the Court concluded with a remark that was really rather disparaging to this attorney, that while nobody ever told you when you started your career as a lawyer that it was going to be easy, that wasn't the problem that Mr. Speakerman was dealing with. He was dealing with a situation where he and his client, in part because of threats from the client and anger from the client, just no longer were speaking. They had, according to what Mr. Speakerman said, they would barely begin to talk and it would degenerate into noncommunication. The lawyer in a situation like that, whatever the ultimate conclusion is about the merits, is in a very difficult position. Indeed. Because he doesn't want to do things that would prejudice his client, his then-client, in an ongoing manner, even if he's allowed to withdraw. So he has to necessarily be circumspect, particularly if the difficulty relates to the client wanting to do something that's unethical, illegal, et cetera. Right? Yes. You may have been in that position yourself. Yes. But then, indeed, when asked to withdraw, but without describing the details, when I've been in that position, I've never had a situation where it was basically a shouting match between the client and me. This was something that Lommel had pointed out back at the time of the Marsden hearing already, that he was having difficulties with Mr. Speakerman in terms of things that probably weren't Mr. Speakerman's fault, but Lommel was perceiving a lack of eye contact, the lack of visit. Some of these were accurate. It did appear that Mr. Speakerman had not visited him much. But there certainly were personality issues. But from there, it's a leap. It's a stretch to say that Lommel was intentionally trying to disrupt the representation. Lommel had had counsel previously before Speakerman came in, in which there didn't seem to be that level of problem in the public defender's office. And Mr. Speakerman candidly thought that there might be some mental issues. Now, the competency evaluation was held, and they didn't find that Lommel was incompetent and simply unable to provide counsel. But this wasn't – there's no indication in this case that Lommel was trying to gain some advantage in delay. There was time until trial. New counsel could have been appointed. And this seemed to be such an intense clash, perhaps personality-driven, but it was reciprocal. It wasn't just Lommel saying to Speakerman, I can't stand you, or far worse, I'm sure, you know, the communication was far worse. But Speakerman, in turn, felt that. So it was so mutual. To me, this notion, when you tell the trial court that you can't even humanize your client, you're saying that there's something very, very deep. That's not related to a question of – there's this flavor flowing underneath in the State court opinions that Lommel was asking Speakerman to commit perjury. Speakerman is – Roberts, it's a particularly difficult situation for a defense counsel, criminal defense counsel, isn't it? Because in some jurisdictions, it's unethical to tell the judge that what the client wants to do is lie. Indeed. And I found myself in that situation, and before you just say, Your Honor, I'm facing – I've moved to withdraw, and I can't tell you why. Indeed. And you hope that you've got an experienced enough judge to – where the light goes on and realizes what's up. But that didn't happen here. That didn't happen – I have to say that I'm struck by the lack of depth of the inquiry. The judge had a responsibility there, as he so effectively did back in July, to probe and get at what the nature of the problem was in terms of – there were questions to ask about the nature of the dislike, what were the threats about. None of that occurred. The judge just lectured, Mr. Speaker, that he could – he ought to stand up and carry on this case, regardless of the problems and the ill feeling. But how would Mr. LeMell ever feel comfortable doing anything besides pleading in a three-strike trial where his lawyer is telling the judge, Your Honor, I – But he was pleading to avoid three strikes, right? He did avoid three strikes. Right. So if we fast-forward this, and if we were to grant relief, he would go to trial with the risk of getting a three-strikes verdict, right? He would. Okay. Yeah. And – but, of course, that's his decision to make if it were reversed. Yeah. I just wanted to make sure I understood that. And he – yes, that's a definite risk. He's entitled to make foolish decisions, right? Yes. And you've discussed that with him? Yes. I let him – you know, this has been spelled out. The Attorney General has pointed it out. I have relayed that to him. And that apparently is a risk that he would be willing to take. How much time elapsed between the denial of the motion to withdraw slash discharge lawyer and the entry of the plea? I recall I think about six weeks. It was not – the entry – the plea was not entered far beyond the date for which the – of the anticipated start of trial. So about six weeks? You can pick that back up on a rebuttal if you'd like. Yes. I just wondered now, did anything happen in between other than the competency matter? Not that I'm aware of, no. Do you want to save about two minutes? I would like to. Okay. Thank you. Thank you for your argument, counsel. We'll hear from the State, the Warden at this time. Ms. Moy. Good morning, Your Honor. Juliet Haley appearing for the Warden in this case. I think that the fallacy of LaMelle's position in this case is that obviously we're not disputing that you have a right to conflict-free counsel and you have a right to have an effective advocate. But the problems in this case did not come from anything that Mr. Speakerman did. The limitation – this is sort of a Morris v. Slappy case, as I see it, that you have – you have no reason for the client to legitimately distrust the attorney. No reason for the client not to cooperate, not to participate. In this Court's decision in Daniels, it says that the defendant has with legitimate reason completely lost trust. Then he can – you know, then we will excuse his failure to communicate. Similarly – Can a defense lawyer in California ethically tell a judge who may hear the case and sentence the defendant if there's a conviction that he wants to withdraw because he believes his client wants to commit perjury? I believe that they can. They can actually state, Your Honor, I move to withdraw because my client wants to take the stand and commit perjury. No, I think that they have to – I don't think that they can outright say that. I think, as Mr. Lipmanson has said, they can suggest it. And I think that it was – there was an indication here that – I mean, it's the judge that picked up because what they're talking about in this code is the evidence, you know, the constitutional rights that the defendant wants to assert and, you know, he has a right to make – to do that. And the judge, in fact, says sometimes you're in that position where your client wants to do these things and, you know, you can't ethically do that. And counsel, again, picks up and says, you know, yeah, we're having this personality conflict, but we're fighting about the kind of case to put on. In that situation, isn't – let's assume that that communication was made, that the client wants to get on the stand and lie, and I've been unable to talk him out of it. Is the judge assuming that if he denies the motion that he'll be able to talk him out of it later, that a new defense lawyer wouldn't be able to talk the client out of doing that sort of thing? What is the judge doing in a situation like that? Well, I think that what the judge is trying to do is to not – you know, is to both signal and sort of contain the box and say, you guys have to work this out because, I mean, you don't get to just keep trying to find a lawyer that will allow you to go commit perjury. I mean, Nick's – the Supreme Court's made clear of that, that that's not a cognizable, legitimate Sixth Amendment denial. That kind of – Why wouldn't an evidentiary hearing flesh this out? I mean, we're sort of speculating. We think we know what happened, or we might think we know what happened, but we don't because we didn't – there wasn't an evidentiary hearing in the federal habeas. I mean, wouldn't that solve the problem in terms of spelling out exactly what the conflict was? Well, I think that – I mean, our position throughout these proceedings is that, you know, is that – appreciate that there were – there was a motion to withdraw the plea with new counsel to represent Ms. Dillamel. Speakerman was there. Defendant was there. Under California procedure, they could have called any witnesses they wanted in support of the motion. If they felt that there was an adequate inquiry, if they felt that the record needed to be fleshed out, they had the opportunity to do it and didn't do it. They went and filed a State habeas petition, didn't ask for an evidentiary hearing, argued on this record. So our position is that because this is an AEDPA case, he did not act with due diligence. And that's – that was basically the – I mean, that was the reason that the magistrate determined that he wasn't entitled to an evidentiary hearing. So unless this Court concludes that he's met – Well, I wasn't asking – From a legal – just – I wasn't asking whether there was legal justification for it. I'm just asking, wouldn't an evidentiary hearing flesh out these matters? I mean, I suppose that you could get more and more information, but I think that it presumes that there's anything here. I mean, everything that's in this record, whether it's personal dislike, that's not enough. Right. Whether it's – But we don't know. My only point is that we don't know for sure. But – There is a reason for not developing that in the direct proceedings of State court, as Judge Hawkins has pointed out. You've got – you know, if the attorney says he wanted to lie and I didn't – I wasn't going to allow him to do that. I couldn't ask that they do that. I mean, that's – counsel really can't – is prohibited from saying that in direct proceedings. So I can understand that that motion for – to vacate the plea, why he wouldn't take the stand and put on the evidence. But I – It's arguable whether he could have done it or should have done it in the State habeas proceedings. But at least if in the Federal proceedings we had an evidentiary hearing to find out what was going on, we would have a little better idea about whether it's just a personality conflict or something deeper. But I think that you've got to take it to the next step, which is that – just suppose that it was, as it seems to be indicated, that there was some element of this wanting to commit perjury. Nix says that's – doesn't – that will not be a conflict that's a cognizable Sixth Amendment conflict denying counsel. Right. We just don't know, though. That's the – that's my argument. But I guess my – what I'm asserting is that he's not entitled to release even if that is what's the conclusion. Right. But what you're also presuming is that there's no possible way that they could establish that the conflict was so severe that would warrant – and we just don't know that from the evidence right now. I'm not saying that they may not be entitled to it now, but it would make our task a little easier. Well, I can appreciate that if this was a case, you know, like Shell, where the motion is lost in the shuffle or the judge is just – disregards and, you know, doesn't – doesn't conduct any kind of hearing, doesn't take him seriously. But, you know, contrary to Mr. Lemonson's suggestion, when you read this record, the court is saying, give me some specifics. Tell me. Help me. You know. You're giving me some generalities. I need to hear more. And you're free to tell me. I mean, I – you know, I have it quoted in my brief. It's right here in the excerpts on page 20. So this is not a case where the attorney is shut down by the judge, and which has been the instance in some of the U.S. cases that we've talked about with conflicts. Your argument is that they had every opportunity and every reason and no impediment not to bring this out at some stage after the plea. Yes. And they didn't. And what I'm also arguing is that every suggestion about, you know, whatever inferences you draw on this record, the question is, was it objectively unreasonable the ones the state court drew in denying – determining that there was not a cognizable conflict. So how do you distinguish Plumlee? Plumlee, to me, is a case where the majority in Plumlee determined that there was objective evidence justifying the defendant's refusal to cooperate. You had your defense counsel going and becoming a DA in the middle of your case and not telling you. The PD in Plumlee, the, you know, elected PD, is friends with and is advising the other suspect in the case. And there were all these concerns about leaking your defense to the district attorney's office. Now, if there are objective facts, objective evidence that says that you have a reason to clam up, not to trust your attorney, not to speak, then that is a basis. I mean, I think that's the case here. What is the basis? The problem in this case is there's nothing that Speakerman has done to legitimately cause this defendant to distrust him. The problem in this case is the strength of the prosecution's case and that he's looking at 58 years to life. I mean, this was not a complicated criminal case. The defendant robs a 7-Eleven store. The victim knows him as a former customer, tells him, come on, is this worth murder? He shoots him in the leg. He's found 56 yards away with witnesses seeing him head over there with the gun in the outfit and with the crumpled up money that he took. I mean, when he loses the suppression motion, when he loses the motions to strike his strikes, it's a dead case. And he's looking at a really long sentence, a life sentence. And, you know, I think Speakerman is commendable. He's doing whatever he can. He's saying, I can't get along with him. I don't know if it's him or he just can't do it. Let's have a 1368. Let's see. And then they have one. This judge isn't blowing it off. They have one. They have him examined by two alienists. They say, no, he can cooperate if he wants to. He doesn't want to. And Morris says, you don't get to do that. You don't get to just be a lousy client and get a new lawyer. And I think that's what you have here. And at the end, I mean, Speakerman gets him a 30-year sentence, a determinate term. That's lengthy, but it's not a life term. So I just, I don't see, even if you take every single thing that Mr. Williams is suggesting with this record, that there's anything there that would constitute a conflict. Roberts. Okay. Thank you. Thank you for your argument. Rebuttal. The entry of plea date was November 13th of 1998, so about five to six weeks after the hearing. The evidentiary hearing would indeed have flushed out the issues, I believe, that you're describing. And we had supported the notion of an evidentiary hearing. But why, given the fact you didn't seek it in State court, why should you be entitled to one in Federal? I understand that point. Of course, I was not counseled back in State court. When I say you, I'm speaking generically. I'm not. Yes. With regard to it being a dead case, Mr. Speakerman didn't see it that way. Mr. Speakerman was working on the case in order to provide a defense. Conflicts arose there. And it's indeed very hard to wrap one's hands around the nature of the conflict. But Speakerman implied that if you read between the lines and do see a desire back in July on the part of the client to give perjured testimony, by the time we're getting around to October, Speakerman is talking about a personality conflict on his end that is going to impede him from effective representation. And that's the plumbly problem. The fact that once the conflict has become so acute that effective representation is no longer possible, prejudice is presumed. And Lamel would have been, from my perspective, downright insane to have gone forward in a trial when counsel says he doesn't think he can put on a fair trial, let alone humanize him. Now, the question, had this been only Lamel's problem, I don't think we would be here today. The thing, the issue is Speakerman saw that there was a problem that was going to impede him from giving Sixth Amendment proper representation. And the judge should have taken that more seriously and at the very least gone into a deeper inquiry and lastly granted the motion. Thank you. Thank you both for your argument. Very well done. The case just argued will be submitted for decision. We'll now proceed to the next case on the argument calendar, which is CREAGRI versus USANA Health Services. If counsel are present, if they'd come forward, please.
judges: Noonan, Hawkins, Thomas